**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08-CV-00041-RLV
(5:03-CR-00004-RLV-DSC-8)**

| | |
|---|---|
| RODERICK LAMAR WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

**ORDER**

  **THIS MATTER** is before the Court on Respondent's motion for summary judgment. (Doc. No. 28). Respondent contends that all of the claims raised by Petitioner in his Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, as amended, should be denied and dismissed as without merit. For the reasons that follow, Respondent's motion will be granted.

**I. BACKGROUND**

**A. Trial**

  On July 22, 2004, Petitioner was convicted by a jury sitting in the Western District of North Carolina on charges of conspiracy to possess with intent to distribute at least five kilograms of cocaine, and at least fifty grams or more of cocaine base, all in violation of 21 U.S.C. § 846 (Count One); possession of at least 500 grams of cocaine with intent to distribute and aiding and abetting in that possession, all in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count Six); and two counts of the possession of a firearm during and in furtherance of a drug trafficking crime and aiding and abetting that possession, in violation of 18 U.S.C. §§ 924(c)(1)

1

and (2) (Counts Seven and Nine). (5:03-CR-00004, Doc. No. 364: Verdict Form); (Doc. No. 340: Fourth Superseding Bill of Indictment).

Petitioner appeared with counsel for his sentencing hearing and was sentenced to concurrent terms of life imprisonment for conviction on Counts One and Six; to a term of sixty months on Count Seven, and 300 months on Count Nine, to be served consecutively. Petitioner's total term of imprisonment was therefore life plus 360 months. (Doc. No. 641: Judgment in a Criminal Case at 2).

## B.    Appeal

Petitioner filed a timely appeal from his convictions and sentence to the United States Court of Appeals for the Fourth Circuit. Petitioner raised two issues on appeal, only one of which is generally relevant to resolution of Petitioner's Section 2255 motion, namely, Petitioner challenged whether there was sufficient evidence to sustain his convictions. The Fourth Circuit held that they had "reviewed Williams' sufficiency of the evidence claim, and conclude that the claim is without merit." United States v. Williams, 225 F. App'x 151, 154 (4th Cir. 2007) (unpublished). In explaining this conclusion, the Court found:

> Ample evidence was presented at trial in this case to support the jury's finding that Williams was involved with others in an established conspiracy to possess with intent to distribute significant amounts of cocaine and cocaine base, that he possessed firearms during and in relation to drug trafficking crimes, and that he aided and abetted the same. Several witnesses, including co-conspirators and Government agents, attested to Williams' trips out-of-state and out-of-the-country with others to purchase large amounts of cocaine and cocaine base and transport it back to North Carolina where it was prepared, packaged, and distributed. Williams was identified as a member of "The Cream Team," an established narcotics trafficking organization operating in and out of North Carolina. A number of such witnesses also testified that Williams often carried a firearm on or immediately near his person while he conducted drug trafficking transactions. The evidence introduced at the trial of this matter clearly supports the jury's determinations with regard to the offenses charged, and we reject Williams' claim that the evidence was insufficient.

Id. at 155 (internal citation omitted).

The Court upheld Petitioner's convictions and sentence in its entirety.

## C.    Section 2255 Motion

On May 19, 2008, Petitioner filed a Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 and therein raised 13 claims that Petitioner was subjected to ineffective assistance of counsel when: (1) trial counsel failed to have the evidence regarding his history with a drug organization suppressed; (2) trial counsel failed to file motions to correct "Affiant Ramsey's false testimony," and failed to properly make [a] specific Franks argument" as Petitioner requested; (3) trial counsel refused Petitioner's request for a blood splatter expert to examine a plastic bag and other items which were admitted into evidence during his trial; (4) trial and appellate counsel failed to raise a Fourth Amendment search and seizure claim challenging the evidence that was obtained during a traffic stop; (5) trial counsel allowed false and/or conflicting testimony from certain witnesses during both Petitioner's suppression hearing and his trial; (6) trial and appellate counsel failed to challenge the instructions which allowed the jury to determine the quantity of cocaine or cocaine base which was involved in the entire conspiracy, rather than the quantities which were attributable to Petitioner; (7) trial counsel withdrew from the case during sentencing, thereby compelling Petitioner to proceed pro se; (8) trial counsel precluded Petitioner's efforts to raise Apprendi based objections to his Career Offender designation, and objections to the use of the term "cocaine base" in his Indictment; and (9) appellate counsel labored under an "active conflict of interest" by virtue of his belief that Petitioner was guilty. (Doc. No. 1 at 4-24).[1]  On June 2, 2008,  the Court entered an Order

_____

[1]All references to documents of record, including transcripts, whether in this civil case or in the underlying criminal case, will be to the page number which is located as a footer generated

3

directing Respondent to answer Petitioner's claims. (Doc. No. 3). On June 24, 2008, Petitioner supplemented his Motion to Vacate with excerpts from his trial transcript, a copy of the program from his mother's funeral service, a petition requesting a new trial signed by citizens from his community, and an affidavit from the person who collected those signatures. (Doc. No. 4). On September 9, 2008, Petitioner amended his Motion to Vacate to include a claim that trial counsel was ineffective for having failed to recall a witness for the purpose of impeaching the testimony of that witness. (Doc. No. 18).

On October 9, 2008, Petitioner filed documents captioned as a Motion to Supplement Pursuant to Federal Rules of Civil Procedure, Rule 15(a). (Doc. Nos. 22 and 23). The first of the two supplements proposed a claim that counsel was ineffective for having failed to have an expert examine the blood evidence and/or seek the exclusion of unreliable blood evidence recovered from a crime scene on July 25, 2002. (Doc. No. 22 at 3). According to Petitioner, counsel became aware of this potential claim while cross-examining two witnesses, yet he failed to seek the assistance of an expert to establish that the officers failed to use precautionary procedures to ensure the integrity of the blood evidence. (Id. at 3-4). Last, Petitioner proposed to argue that appellate counsel was ineffective for having failed to raise a claim challenging the reliability of the blood evidence. (Id. at 4).

The other supplement, (Doc. No. 23), proposed a claim that counsel was ineffective for failing to obtain "necessary documents" from a correctional facility to establish the falsity of Analyst Brenda Bessette's testimony by showing that Petitioner's DNA already was in the North Carolina database. (Id. at 3-4). Finally, Petitioner seeks to add a claim that appellate counsel was

by the ECF System.

ineffective for having failed to raise a due process claim on the basis of that testimony. (Id. at 4). The Government has filed a response to these amendments.

In addition to his Section 2255 motion and amendments, Petitioner has filed several motions following the Government's motion for summary judgment.

1.      Motion for Leave to File Supplement to 2255 Motion to Vacate, Supplemental Forensic Blood Expert Opinion, Motion's for Discovery and Motion for Appointment of Blood Expert. (5:08-CV-00041, Doc. No. 49). Petitioner filed a later motion seeking to submit his report regarding blood evidence which was obtained and tested from a plastic bag. Taking the evidence in the light most favorable to the Government, testimony presented at trial by law enforcement officers, and forensic personnel, demonstrated that Petitioner's blood was found on the bag, and that the bag was found at the scene of a semi-successful drug robbery carried out by Petitioner and one of his co-defendants, Morrison. Petitioner has submitted his proposed expert report and his motion to supplement will be **GRANTED**. As it appears from the record that Petitioner has retained a blood expert, his motion for the appointment of a blood expert and motion for discovery will be **DISMISSED** as moot.

2.      Motion for Leave to File Supplement to 2255 Motion Pursuant to Fed. R. Civ. P. 15. (Doc. No. 50). As this Motion seeks to supplement the arguments already advanced in Petitioner's Section 2255, and therefore does not present new claims, this Motion will **DISMISSED** as moot. Moreover, the Court has considered this Motion and attached exhibits in its resolution of Petitioner's Section 2255 motion.

3.      Motion for Leave to Supplement Pursuant to Fed. R. Civ. P. 15(c) and (d). (Doc. No. 53). By this Motion, Petitioner argues that the recent media coverage of the blood analysis conducted by North Carolina State Bureau of Investigation supports his motion for discovery on

the issue of the blood evidence presented against him at trial. On March 19, 2012, Petitioner submitted his expert report to the Court which endeavored to challenge the blood evidence collected from the plastic bag found at the scene of the botched robbery, among other things. Because the Court finds that Petitioner has had a full and fair opportunity to address this issue, Petitioner's Motion for Leave to Supplement, (Doc. No. 53), will be **DENIED**.

4. Motion to Amend/Correct Clerical Mistake and Clarify Record. (Doc. No. 56). Petitioner notes the voluminous history of his filings in this Section 2255 and asks the Court to "correct the record by clarifying that motion to Supplement (Doc. No. 55) is assigned for response in conjunction with trial counsel being prejudicially ineffective for failing to have expert examine blood evidence and/or seeking exclusion of unreliable blood evidence recovered from the July 25, 2002 crime scene." (Doc. No. 56 at 2). This Motion will be **ALLOWED** to clarify the record.

5. Motion for Enlargement of Post-Deadline Extension of Time. (Doc. No. 60). Petitioner moves the Court for additional time to file responses in opposition to the Government's motion for summary judgment. It appears from the record that Petitioner has filed his response, (Doc. No. 61), contemporaneously with the filing of his Motion for Extension of Time. (Doc. No. 60). This Motion will be **ALLOWED**.

6. Motion to Supplement Pursuant to Fed. R. Civ. P. 15(c) and (d). (Doc. No. 64). Through Doc. No. 71, Petitioner moves to withdraw his Motion to Supplement. Petitioner's Motion to Supplement, (Doc. No. 64), will be **DISMISSED** as moot.

7. Motion to Withdraw Supplement, (Doc. No. 64). (Doc. No. 71). The Motion to Withdraw Supplement will be **ALLOWED** for the reasons stated supra.

8. Motion for Leave to File Supplement Regarding Expert Report on Blood

Analysis. (Doc. No. 72). This Motion will be **ALLOWED**.

9.      Motion for Leave to File Supplemental Pursuant to Fed. R. Civ. P. 15. (Doc. No. 74). This Motion will be **ALLOWED**.

10.      On September 27, 2012, Petitioner filed yet another motion to amend his Section 2255 petition. Through this motion, Petitioner contends that prior state convictions have been vacated by the Iredell County District Court and this Court therefore erred in calculating his total offense level under the Guidelines. Petitioner argues that his appellant counsel was ineffective in not cuing in on this fact, and that he is entitled to be resentenced on Count Six which charged Petitioner with violation of 21 U.S.C. § 841. (Doc. No. 75 at 4-6). The maximum penalty for conviction of a violation of § 841 is life imprisonment. See § 841(b)(1)(A). As noted, Petitioner was sentenced to life imprisonment on Count Six therefore any alleged error in calculating his sentence is harmless because he received a sentenced that is within the maximum as authorized by law. See 28 U.S.C. § 2255(a). Moreover, this Court would not have reached a different conclusion in deciding an appropriate sentence to impose. The motion to amend will be **ALLOWED** as the Court finds that the argument is fairly within Petitioner's broadside attack on his sentence. However, the Court denies Petitioner the relief he seeks in the amendment and the argument is dismissed as without merit.

11.      Finally, the Government filed a Motion for an Extension of Time to File a Response/Reply. (Doc. No. 59). This Motion will be **ALLOWED** for good cause shown.

## II.  STANDARD OF REVIEW

A.  Section 2255 Proceedings

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and

the record of prior proceedings . . ." in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion is not dismissed after this initial review, the Court must direct the government to respond. Id. The Court must then review the government's answer and motion for summary judgment and material submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a). Petitioner moves the Court for an evidentiary hearing. (Doc. No. 1 at 14). After having considered the voluminous record, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B.      Summary Judgment Standard

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

C.      Ineffective Assistance of Counsel

In order to establish a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also

Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with errors of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 142, 170 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290 (citing Strickland, 466 U.S. at 697).

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). The Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id.

### III.    DISCUSSION

A.      Grounds for Relief

1.      Ground One

In his first claim for relief, Petitioner contends his trial counsel was ineffective for failing to challenge the expanded time of the alleged conspiracy as set forth in the Fourth Superseding Bill of Indictment. (5:08-CV-00041, Doc. No. 1-21 at 5). Petitioner argues that the "purpose of the criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish" as criminal conduct. (Id.).

On June 29, 2004, the grand jury sitting in the Western District returned the Fourth

Superseding Bill of Indictment and therein charged Petitioner and others, from on or about January of 1995 and continuing until in or about July of 2003, with participating in a conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, and 50 grams or more of a substance containing cocaine base. (5:03-CR-00004, Doc. No. 340). The evidence presented at trial shows that Petitioner did not withdraw from this conspiracy until he was essentially forced to withdraw following his arrest on or about April 12, 2003. (See Docket Entry, Apr. 12, 2003). The statute of limitations for the charged conspiracy is five (5) years. See 18 U.S.C. § 3282(a). The evidence at trial amply demonstrated that Petitioner made no effort to withdraw from this conspiracy, certainly not within five years of July, 2003.

It is well established that:

A defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy. If the defendant produces such evidence, the issue of withdrawal goes to the jury, and then the government must then prove beyond a reasonable doubt that the defendant did not withdraw from the conspiracy.

United States v. West, 877 F.2d 281, 289 (4th Cir. 1989) (citing United States v. Urbanik, 801 F.2d 692, 697 (4th Cir. 1986)).

In Petitioner's case, other than his own denials, there was no evidence presented at trial that he took any efforts to withdraw from the charged conspiracy. In short, as the Fourth Circuit found in his appeal, the Government presented substantial evidence of Petitioner's guilt as to the charges in the Fourth Superseding Bill of Indictment. Petitioner's argument regarding ineffective assistance of counsel in Ground One must be denied and dismissed as Petitioner cannot show ineffectiveness for failure to argue an incorrect position of law regarding the indictment.

    2.    <u>Ground Two</u>

Next, Petitioner challenges the evidence that was presented in an affidavit signed by Detective Ramsey in support of a search warrant. Petitioner contends that his trial counsel "knew from the onset that Affiant Ramsey deliberately omitted material facts from the November 10, 2003 warrant affidavit and therein included false statements." Petitioner argues that his counsel provided constitutionally deficient representation in failing to raise an argument under Franks v. Delaware, 438 U.S. 154 (1978), and instead Petitioner's trial counsel "conceded to misconduct, which the prosecutor and district court attentively used as a tool against counsel." (Doc. No. 1-21 at 9).

The object of the search warrant, and verily, the constant focus of Petitioner's challenge in his Section 2255 motion is blood evidence which was obtained by virtue of the challenged warrant. Petitioner filed a motion to suppress the DNA blood evidence contending that the magistrate judge lacked probable cause to issue the search warrant which resulted in the gathering of the blood evidence. (5:03-CR-00004, Doc. No. 328: Motion to Suppress DNA Blood Evidence). Petitioner's arguments are misguided, and at times simply misstate the record. Contrary to his assertions, his trial counsel vigorously contested the facts which the Government relied upon in the effort to secure the warrant. For example, Petitioner's counsel argued that, "[i]n fact, at the time it applied for the search warrant to obtain blood samples from Mr. Williams, the Government knew that its informants were neither reliable nor truthful. In addition to Garcia's admitted lack of truthfulness regarding the identity of the alleged shooter in connection with the drug robbery, the Government was aware - long before Detective Ramsey applied for the search warrant of Mr. Williams's body - of other inconsistencies in Garcia's accounts regarding the events of July 25th." (Id. at 9).

The Motion to Suppress came for hearing before the Court on July 6, 2004, where Petitioner was present with counsel. Detective Ramsey testified that he prepared his affidavit from a review of reports provided by the Statesville Police Department, and interviews with Malik Mohammed, Larry Robinson, and Andy Garcia. (5:03-CR-00004, Doc. No. 685: Transcript of Motion Hearing at 10). In particular, Detective Ramsey's noted that Garcia had given inconsistent statements during the course of interviews leading up to the issuance of the search warrant. These inconsistencies were rigorously explored by Petitioner's trial counsel during the suppression hearing and in his memorandum in support of the motion to suppress. Following presentation of evidence by the Government, the Court denied the motion to suppress the DNA blood evidence and concluded that "the evidence that was before the magistrate judge was sufficient to justify a reasonable suspicion and justify a search warrant." (Id. at 59).

After considering Petitioner's arguments under Ground Two and examining the record in this matter, the Court finds that Petitioner has failed to show that Petitioner's trial counsel provided ineffective assistance of counsel. This ground will therefore be denied and dismissed.

Likewise, Petitioner has failed to carry his burden to challenge the effectiveness of his appellant counsel. Petitioner's argues that the glaring Franks argument must have been apparent from the record assembled on appeal to the Fourth Circuit. (5:08-CV00041, Doc. No. 1-21 at 9-10). While it is true that issues involving the suppression motion would have been apparent to appellant counsel, the Court finds, as it did following the presentation of evidence during the July 6, 2004 suppression hearing, that there was sufficient evidence to support the issuance of the warrant. Petitioner's claim regarding ineffective assistance of appellate counsel under Ground Two will be denied and dismissed.

### 3. Ground Three

Petitioner continues on with his attack on Detective Ramsey's testimony and contends that the "knowing use of perjured testimony constitutes a due process violation." (Id. at 10). Contrary to Petitioner's assertion, the evidence presented during the suppression hearing through Detective Ramsey freely acknowledged that Garcia, for instance, had given inconsistent statements during interviews in connection with the July 25, 2002 robbery. Whether and what to make of inconsistent statements by a witness are the subject of cross-examination, which cross-examination was ably carried out by Petitioner's trial counsel during the suppression hearing and throughout the course of the eleven-day trial of this matter.

Undoubtedly, "it is the role of the factfinder to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence." United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). As factfinder during the suppression hearing, that is what the Court undertook to do in ruling on the motion to suppress. And at trial, twelve jurors assumed their role as fact finders and reached a verdict of guilty beyond a reasonable doubt as to all charges pending against Petitioner in the Fourth Superseding Bill of Indictment. Petitioner's Ground Three is without merit and will be denied and dismissed.

### 4. Ground Four

Here, Petitioner contends that his trial counsel was ineffective for failing to raise proper challenges to DNA blood evidence obtained from the plastic bag recovered from the robbery crime scene of July 25, 2002. Specifically, Petitioner argues that his trial counsel was ineffective "by failing to properly seek the exclusion of unreliable blood evidence and/or by failing to hire a blood splatter expert." (5:08-CV-00041, Doc. No. 1-21 at 13-14). As noted

above, Petitioner has the burden to demonstrate that the alleged errors of his trial counsel worked to his "actual and substantial disadvantage, infecting his trial with errors of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 142, 170 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290 (citing Strickland, 466 U.S. at 697). While it is clear that Petitioner disagrees with his trial counsel's decisions, he has plainly failed to demonstrate a deficient performance and prejudice.

During trial, Lieutenant Tony Johnson testified that he received a small plastic bag from Officer Onley who responded to investigate the crime scene from the July 25, 2002 robbery.[2] Additionally, Johnson testified he recovered two other bags which appeared to contain cocaine. With respect to the small bag, Johnson photographed it after observing what he thought appeared to be blood on the bag. Next, he placed a typed label on the photograph which indicated the date

---

[2]The Court addresses herein Petitioner's amended claims which are nothing more than an expansion of his original arguments raised in his Section 2255 motion. (5:08-CV-00041, Doc. No. 18 at 3-4). This argument is rejected as being without merit.

Petitioner also contends in his amended claim that his appellate counsel was ineffective by "raising [the] 'clearly weaker claim' (Insufficient Evidence), in replace of properly raising significant and obvious issue (Due Process issue)." (Id. at 4). Petitioner provides no argument as to how this was prejudicial, and the Court can find no such support that this action was in error, much less prejudicial. This argument will be overruled. Appellate counsel is entitled to make reasonable choices as to which arguments he or she thinks have the best chance of succeeding on appeal. To that end, appellate counsel is not required to raise all issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Moreover, in choosing which issues to pursue, appellant counsel "is entitled to a presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

he took possession of it: July 25, 2002. Johnson also testified that there appeared to be cocaine in the bag. (5:03-CR-0004, Doc. No. 691: Trial Transcript at 5-6). Johnson took possession of all three bags and submitted them to the North Carolina State Bureau of Investigation ("SBI") for examination. Petitioner appears to argue the chain of custody may have been compromised after these items were taken into custody by Johnson, but the transcript does not support this assumption. Johnson testified that he filled out an evidence submission form contemporaneously with the receipt of the three plastic bags and this form was admitted into evidence and published to the jury. The evidence submission form reflects that all of the plastic bags which were recovered were accounted for, in particular, the smaller plastic bag which Johnson testified appeared to have the presence of blood on it. (Id. at 9-10). These items, on direction of Johnson, were sent to the SBI lab to be tested for the presence of blood and cocaine.

One of the co-defendants, Morrison, was shot at the scene of the robbery. His DNA profile was compared to the residue from the small bag and it did not match. (Id. at 18). Evidence at trial places Petitioner there at the robbery with Morrison. Johnson testified that Andy Garcia was a resident of the apartment which was robbed on July 25, 2002, and that two black males were the suspects in the robbery. Garcia was interviewed by Johnson and shown a photographic lineup which included a picture of Morrison, which Garcia positively identified. Next, Petitioner was shown a second lineup containing a picture of Petitioner. Garcia identified Petitioner and confirmed that Petitioner was one of the black males, along with Morrison, who were responsible for the robbery at his house. (Id. at 18-25).

As previously noted, a sample of Petitioner's blood was obtained by court order. This court order and the blood obtained thereby was the subject of the unsuccessful suppression

hearing of July 6, 2004. The small plastic bag was originally tested by Special Agent Susie Barker from the SBI. She testified that the small plastic bag tested positive for blood although at the time of original testing there was no match to any individual. (Id. at 84). Barker further testified on cross-examination by Petitioner's counsel that she had visibly identified blood on the surface of the small plastic bag. (Id. at 93-94).

Special Agent Brenda Bissette from the SBI provided testimony regarding her involvement in the case and she testified as an expert in the field of forensic DNA examination before the jury without objection. (Id. at 101-02). Bissette provided evidence that DNA is "a hundred percent exclusionary, so it is the best way to eliminate a falsely accused individual. And conversely, it is currently one of the best ways to identify who the contributor of the blood could be" based on an evidence sample. (Id. at 103).[3]

Bissette identified items in evidence as being delivered from Special Agent Barker. These three items were a swabbing from a light switch plate, a swabbing from a plastic bag, and also a bloodstain that was prepared from a sample of blood voluntarily provided by Phillip

---

[3]The Court will address Petitioner's amended argument wherein he contends that his trial counsel presented Bissette's "known false testimony." (5:08-CV-00041, Doc. No. 23 at 3-4). Petitioner argues that his counsel knew that Petitioner's DNA profile had been added to the NC database. While the logic of the argument is unclear, it appears that Petitioner contends that the production of evidence regarding the presence of Petitioner's DNA profile in the NC Database would have demonstrated that Bissette provided false testimony when she testified that she could not find Petitioner's DNA profile in the NC Database. Bissette did testify that she could not locate Petitioner's DNA profile in the NC Database and this explained why she had to wait for a sample of blood from Petitioner. This argument fails to raise ineffectiveness or prejudice. At best, if evidence had been produced which showed Petitioner's DNA profile was already in the NC Database, this would have amounted only to a possible inference that Bissette did not conduct the most thorough search of the database. It would not have undermined her conclusion regarding whether Petitioner's blood was, in fact, found on the plastic bag recovered from the July 25, 2002 crime scene. This argument is therefore overruled.

Petitioner's next argument is identical to the one raised in Doc. No. 18. This argument has previously been rejected.

Morrison. Bissette also identified what was later admitted as Government 7(a), the SBI suspect collection kit of Roderick Williams, the Petitioner. The sample was taken following the issuance of the court order for Petitioner's blood in November 2003. (Id. at 108). Bissette testified that she tested Morrison's sample against the sample from the plastic bag and concluded that Morrison was again excluded as the source of the DNA evidence from the above identified items. Most importantly, Bissette concluded that the DNA evidence obtained from the small "plastic bag matched the genetic profile of Roderick Williams and statistical value was assigned to that match" which Bissette testified was:

> 31.8 million trillion times more likely be observed if it came from Roderick Williams than if it came from an unrelated individual in the North Carolina Caucasian population; 578 thousand trillion times more likely to be observed if it came from Roderick Williams than if it came from an unrelated individual in the North Carolina black population; 11.2 million trillion times more likely to be observed if it came back from Roderick Williams than if it came from an unrelated individual in the North Carolina Lumbee Indian population; and 33.7 million trillion times more likely to be observed if it came from Roderick Williams than if it came from an unrelated individual in the North Carolina Hispanic population.

(Id. at 110-11).

Finally, based on this evidence, Bissette offered her expert opinion that the blood that was on the plastic bag was the blood of Roderick Williams, the Petitioner. (Id. at 111).

Based on the foregoing, the Court finds that Petitioner has failed to demonstrate ineffective assistance of counsel by his counsel's failure to seek exclusion of the blood evidence, his blood evidence, and in failing to hire an expert to confirm what was overwhelming evidence from Bissette that the blood on the plastic bag was his. This ground is denied and dismissed as argued in his Section 2255 motion, and in his motion as amended. (See 5:08-CV-00041, Doc.

No. 22 at 2-4; Doc. No. 23 at 3-4). [4]

     5.    <u>Ground Five</u>

Next, Petitioner contends that his trial counsel was ineffective for failing to challenge the evidence which was recovered following a traffic stop which occurred in New Jersey in 1999. In particular, a challenge to the admissibility of the recovery of over $41,000 following a search of the vehicle Petitioner was driving. (Doc. No. 1-21 at 16-17).

Sergeant David Litz testified about the stop during Petitioner's trial. Litz testified that he was patrolling Interstate 78 in the Perryville Station area of New Jersey after midnight. (5:03-CR-00004, Doc. No. 687: Trial Transcript at 104-05). Litz observed a 1993 Cadillac with a North Carolina registration which was traveling 74 in a 65 m.p.h. zone and had changed lanes without the use of a turn signal. Litz then activated his red lights and pursued the vehicle for a short while until the vehicle dutifully pulled over along the side of the interstate. Litz testified that before he could exit his vehicle, Petitioner existed the Cadillac and proceeded in the direction of his patrol car. (<u>Id.</u> at 104-06). Litz described Petitioner as very animated as he asked why he had been pulled over. Petitioner admitted that he did not have a driver's license, and that he was only driving to help, presumably the other passengers due to fatigue. Petitioner claimed he was going to visit relatives in East Orange, New Jersey, for a couple of days, but stated he

---

[4]The Court has considered Petitioner's "Supplemental Forensic Expert Opinion" which was submitted March 19, 2012, and the additional documents which were filed by Petitioner on September 10, 2012. (5:08-CV-00041, Doc. Nos. 72, 74). This information challenges the blood evidence obtained from the plastic bag recovered at the scene of the robbery and the resulting DNA evidence presented at trial. The Court finds that Special Agent Bissette's testimony was credible and reliable, as did, apparently, the jury. The information provided by Petitioner was examined by the Court but ultimately it has no impact on the strength of the blood evidence presented at trial, and accordingly, no impact on the Court's finding that Petitioner is not entitled to relief on this claim of ineffective assistance of counsel.

would likely stay in a motel, although he acknowledged that he did not have any luggage in the car. (Id. at 108-09).

Backup soon arrived, and Litz had the opportunity to speak with the passengers while Trooper Monticello stayed with Petitioner. One of the passengers indicated that they were going to stay in Queens, New York with relatives. The passenger stated that the vehicle belonged to "Kelly" from Queens although a check of the registration revealed that the car was actually registered in North Carolina to Kendrick Jermaine Williams of Statesville. (Id. at 112). Litz confirmed that the car was not registered to any of the individuals in the car. As Litz continued to talk with the passengers, Petitioner had to be subdued by Monticello as he made an effort to return to the car.

Litz then asked the passengers if they would consent to a search of the car, and he refused consent. Next, Litz informed them that he would apply for a search warrant for the vehicle. Litz informed the passengers that the vehicle would need to be moved back to the station while the warrant was obtained. In the meantime, two additional troopers had arrived and it was determined that the troopers would ride with Petitioner back to the station. According to Litz's testimony, Petitioner agreed that the trooper could drive the car back to the station so long as Petitioner could ride in the car. (Id. at 136, 147).

As Trooper Wolfe entered the back seat he immediately observed a .9 millimeter and the troopers had to subdue the Petitioner and remove him from the vehicle. (Id. at 124-26). It was determined that the firearm was loaded and everybody was placed under arrest and transported back to the police station. The vehicle was searched and a bag containing $40,000 is cash was located. Follow the passengers transport to the station, an additional $1,666 in cash was found on

the person of Petitioner.

As Petitioner concedes, the Government offered the evidence of the $41,666 to support the allegations of conspiracy alleged in Count One of the Fourth Superseding Bill of Indictment. (5:08-CV-00041, Doc. 1-21 at 17). And as noted previously, the Indictment alleged that Petitioner and others were engaged in conspiracy to possess with intent to distribute cocaine from on or about January 1995 and continuing until in or about July of 2003. (5:03-CR-00004, Doc. No. 340). Petitioner contends "that both trial and appellant counsel's deficient performance [in failing to move to suppress the currency] deprived [Petitioner] of a fair and impartial trial and direct appeal, seriously undermining the reliability of the results." (5:08-CV-00041, Doc. No. 1-21 at 18).

The Court cannot find that Petitioner's trial or appellate counsel were deficient in that the totality of the circumstances presented sufficient evidence that support probable cause for the issuance of a warrant. While not reducible to an exact definition, probable cause may exist where "there is a fair probability contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Moreover, in the situation involving an automobile piloted by a man with no driver's license, and headed for parts uncertain, the automobile exception could readily apply in this case. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).

First, the stop itself was undoubtedly constitutional in that Sergeant Litz observed a clear traffic violation in the lane change. Second, Petitioner admitted that he did not have a driver's license, which Litz testified is a further traffic violation. Third, the conflicting stories about the

destination, the bizarre behavior exhibited by Petitioner, the time of night, the mystery of who owned the automobile that was several hundred miles from its home state of North Carolina, and the explanation that the car was actually owned by Kelly from Queens. These facts alone support probable cause. Finally, Petitioner agreed to allow the Cadillac to be transported by law enforcement so long as he could ride in the car. It was this consent that led to the discovery of the .9 millimeter in the back of the car and the subsequent arrest of all of the passengers of the car. The discovery of the cash would have been inevitable in light of the discovery of the weapon. Petitioner's arguments regarding ineffective assistance of counsel are overruled.

6. <u>Ground Six</u>

Petitioner again appears to contend the Government presented false testimony and evidence regarding the blood which was identified by Special Agent Bissette as belonging to Petitioner. (5:08-CV-00041, Doc. No. 1-21 at 19). The Court has already found this argument lacks merit and will not restate the reasons for that conclusion again. Accordingly, arguments regarding ineffective assistance of counsel or prosecutorial misconduct based on this claim will be overruled.

Petitioner next argues that his counsel was constitutionally ineffective in failing to object to the testimony of Tanesha Turner and Malik Mohammed regarding Petitioner's long history in dealing controlled substances. (<u>Id.</u> at 20). Petitioner also challenges the testimony of other witnesses at trial. These arguments are nothing short of an attempt to attack the credibility of these witnesses or invite the Court to weigh their evidence in this collateral proceeding. <u>Manbeck</u>, 744 F.2d at 392 ("it is the sole role of the factfinder to judge the credibility of the witnesses, resolve conflicts in testimony, and weigh the evidence."). Petitioner's conclusory

statement that his trial counsel "knew" that Turner's; Mohammed's; or Tony Young's testimony was false does not carry his burden to prove <u>Strickland</u> prejudice. Petitioner does not fairly alert this Court as to how the prosecutor, his trial counsel, or his appellant counsel could have known this testimony to be false. As observed many times herein, Petitioner's trial counsel conducted a thorough and vigorous cross-examination of the witnesses at trial. Petitioner's attempt to breezily inject allegations of fraudulent testimony and his contention that officers of the court were accomplices in the presentation of such evidence is wholly unsupported by the record. Inconsistencies in the evidence are to be explored on cross-examination and to be resolved by the jury. Petitioner's failure to do anything other then point out his perceived inconsistencies in the testimony does nothing to further his argument regarding ineffective assistance of counsel or due process violations. Accordingly, Petitioner's arguments regarding due process and ineffective assistance of counsel, trial or appellate, must be dismissed as unsupported by record evidence.

### 7. <u>Ground Seven</u>

Petitioner argues that the trial court's jury instructions "failed to require the jury to determine beyond a reasonable doubt 'the specific drug quantities' individually attributable" to the Petitioner. (Doc. No. 1-21 at 20-21). Petitioner was convicted on Count One on charges of conspiracy to possess with intent to distribute at least five kilograms of cocaine, and at least fifty grams or more of cocaine base, all in violation of 21 U.S.C. § 846; and in Count Six of possession of at least 500 grams of cocaine with intent to distribute and aiding and abetting in that possession, all in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Petitioner was sentenced to a term of life imprisonment on both Counts One and Six, to run concurrently. For the sake of

argument, the Court will presume Petitioner's argument regarding ineffective assistance of counsel for failure to object to the jury instruction on quantity is correct and that his counsel therefore erred. The question remains then whether this error caused prejudice to Petitioner. The Court concludes that it does not.

In his criminal case, the Government notified Petitioner of its intention to seek sentencing enhancements pursuant to 21 U.S.C. § 851, based on a 1997 conviction in North Carolina for felony attempt to traffic in cocaine, and a 1996 conviction for felony intent to sell and deliver cocaine. (5:03-CR-00004, Doc. No. 37). Petitioner's conviction based on the drug quantity found by the jury in Count Six subjected him to a sentence of not less than ten years nor more than life imprisonment. See 21 U.S.C. 841(b)(1)(B) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . .").

Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(emphasis added).

As will be recalled, the Fourth Circuit upheld Petitioner's convictions and sentence in their entirety. The Court sentenced Petitioner to a sentence of life imprisonment for conviction on Count Six. Accordingly, even if the Court were to order Petitioner to be resentenced on Count One, he would still be under the life sentence for conviction on Count Three, a sentence that was

within that authorized by law. Further, the conviction for Count One and Six, and the resulting life sentences were upheld on appeal by the Fourth Circuit. Therefore, Petitioner cannot show that his substantial rights were affected by the sentence of life imprisonment for conviction of Count One. This argument is overruled.

        8.    <u>Ground Eight</u>

Petitioner argues that he suffered a violation of his Sixth Amendment rights; this time contending that because he "was compelled to undergo sentencing without the Sixth Amendment guarantee" he had to proceed pro se during his sentencing hearing. (5:09-CV-00041, Doc. No. 1-21 at 24-25). To be sure, Petitioner, and all defendants, have a right to effective assistance of counsel during the sentencing phase of the criminal process. <u>See</u> <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1386 (2012) ("Even though sentencing does not concern the defendants' guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in <u>Strickland</u> prejudice because "any amount of [additional] time has Sixth Amendment significance.") (quoting <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001)).

On March 15, 2005, Petitioner's case came on for sentencing where he was represented by counsel. First, however, the Court addressed a pending motion by trial counsel to withdraw from further representation. Petitioner's counsel explained that his "client had expressed a burning desire to represent himself and to have me no longer involved in this case." (5:03-CR-00004, Doc. No. 693: Sentencing Transcript at 2). In sum, Petitioner's counsel described a veritable breakdown in the attorney/client relationship such that Petitioner's counsel did not believe he could continue to provide effective representation. The Court addressed Petitioner to inquire what he wished to do about counsel, after noting that Petitioner's motion for new counsel

was denied because Petitioner's trial counsel was "fully conversant with [Petitioner's] case, and a premier attorney in the bar." (Id. at 6). The Court cautioned Petitioner that "a defendant is well advised to proceed with an attorney who's aware of the complexities of the law and able to articulate through experience and training, issues that need to be advanced toward the court. Having said that, it's also a right of a defendant to proceed to represent himself, that is pro se if her prefers to do that." (Id. at 6-7).

Petitioner, when asked why he believed he could actually work with a new attorney, if one were appointed, offered no real explanation. The Court finds that Petitioner, based on his turbulent history with the lawyers who have represented him in this case, and Petitioner's statements in court and through his many pro se letters to the Court, wanted an attorney that would follow his lead and file all of the motions that he wished to file and call each and every witness which Petitioner contended could rebut the evidence offered during his trial. (Id. at 7-8).

The attorney for the Government asked to address the Court. She noted that Petitioner's current trial counsel, Mr. Murphy, was the third attorney to represent him in this criminal case. "And it is apparent to this prosecutor that he wants to use the sentencing phase of this proceeding to retry the case which, as the court is well aware, is not appropriate for a sentencing hearing." (Id. at 9-10). Petitioner noted that he fired his first attorneys, in particular the second, for what he deemed ineffective assistance of counsel, which is the same ground he raised against Mr. Murphy at trial and still beyond. (Id. at 10). Ultimately, after hearing from the Government, Mr. Murphy, and Petitioner, the Court determined that Petitioner had invoked his right to represent himself. The Court noted that Petitioner was free to consult with Mr. Murphy at any time during

the sentencing hearing as it proceeded. (Id. at 42).[5]

The Court then considered the objections filed both by Petitioner, and by his trial counsel to the presentence investigation report, or PSR. Petitioner noted an objection to the drug quantities which were found by the jury in their decision regarding conspiracy to distribute charged in Count One: more than 5 kilograms of cocaine and at least 50 grams of a cocaine base. (Doc. 364: Jury Verdict at 1-3). The Court overruled Petitioner's objection to the drug quantity attributable to him during the course of the conspiracy charged in Count One after considering the PSR and hearing testimony from Agent David Ramsey, the case agent from the Iredell County Sheriff's Department. (Doc. No. 693: Sentencing Transcript at 38).

Petitioner also objected to the proposed application of the murder cross-reference for his alleged role in the uncharged murder of a potential prosecuting witness. Petitioner contended that any enhancement to his sentence could not be found only by a preponderance of the evidence, and could not be based on uncharged conduct. See U.S. Sentencing Guidelines Manual (USSG) § 2D1.1(d) (2004). The Court received evidence through the testimony of Agent Ramsey and concluded that, by a preponderance of the evidence, Petitioner was involved in the homicide of a confidential informant.[6]

The Court also noted Petitioner's objections to his prior criminal history calculation from the PSR, and overruled those objections after hearing from the probation officer and considering

---

[5]It is without doubt that the Sixth Amendment guarantees a defendant the right to self-representation or to the assistance of counsel. See Faretta v. California, 422 U.S. 806, 825 (1975). The Court found that despite his trial counsel's misgivings, Petitioner was mentally able to make a knowing and voluntary decision regarding his decision to proceed pro se.

[6]This conclusion was challenged on appeal. The Fourth Circuit upheld the trial court's determination finding that "by preponderance of the evidence, that Williams was involved in the drug-related homicide of Houston, a confidential informant." Williams, 225 F. App'x at 153-54

26

the documentary evidence which supported those convictions. (<u>Id.</u> at 38-39).

Turning back to Petitioner's Eighth Ground for Relief, the Court finds that first, Petitioner voluntarily waived his right to counsel during his sentencing hearing. Further, the Court finds that Petitioner ably presented and argued his objections, and that Mr. Murphy was present and able to act as standby-counsel. Second, the Court finds that even had Mr. Murphy pressed Petitioner's objections during the sentencing phase, the outcome would have been no different. Petitioner has therefore failed to demonstrate prejudice and his argument will be overruled.

9.      <u>Ground Nine</u>

Petitioner raises yet another challenge of ineffective assistance of counsel contending that his "sentences were predicated on known false evidence." (5:08-CV-00041, Doc. No. 1-21 at 22). The Court has previously rejected this argument as a challenge to the sufficiency of the evidence, a challenge to the credibility of the witnesses, and a challenge to the weight of the evidence. The Court has not found Petitioner's arguments regarding the falsity of the testimony supported by the record. Therefore, the challenges that Petitioner makes are improper as those considerations regarding the weight to be given the evidence are within the sole province of the jury. This argument will be overruled.

10.      <u>Ground Ten</u>

In this ground for relief, Petitioner contends that he received ineffective assistance from Mr. Murphy because his sentence was enhanced based on prior convictions. This argument is without merit. The Court first notes that Petitioner knowingly and voluntarily chose to represent himself after being cautioned on the perils of that decision during his sentencing hearing. (5:03-

CR-00004, Doc. 693: Sentencing Transcript at 6-7).

Further, the Court is free to enhance a defendant's sentence based on competent, record evidence concerning prior convictions. See United States v. Booker, 543 U.S. 220, 244 (2005). Petitioner raised objections during his sentencing which the Court overruled after consulting with the probation officer and determining that the prior convictions contained in the PSR were based on proper, documentary evidence. Petitioner's argument here, as during his sentencing hearing, is that the crimes for prior assault were not really crimes of violence, but were misunderstandings. The Court overruled that objection during sentencing and does so again here in this collateral proceeding.

11.     Ground Eleven

Petitioner here contends that he received ineffective assistance of counsel because the jury instructions did not require the jury to distinguish between "crack cocaine" and "cocaine base." (5:08-CV-00041, Doc. No. 1-21 at 33). This argument is likewise without merit because Fourth Circuit case law holds that these terms may be used interchangeably. United States v. Ramos, 462 F.3d 329, 333-34 (4th Cir. 2006). Accordingly, there was no error in the indictment or in the charge to the jury. This argument will be denied and dismissed.

12.     Ground Twelve

In this challenge Petitioner contends that his appellate counsel operated under a conflict of interest because, in Petitioner's estimation, his appellate counsel was convinced of his guilt. Petitioner offers no evidence or case law to support a finding that an attorney's belief in his client's guilt represents a conflict of interest, or more to the point, evidence upon which this Court can find Strickland prejudice.

28

According to the affidavit provided by Petitioner's appellate counsel, his counsel recalled having the opinion that Petitioner was guilty, but he didn't "recall expressing it." (5:08-CV-00041, Doc. No. 27-2: Affidavit of James B. Craven, III at 2). Even if Mr. Craven did hold this opinion, which is one shared by the twelve jurors who returned the guilty verdicts, there is no evidence that this opinion inhibited or otherwise adversely affected his performance as counsel.

Following his completion of the appellate brief, Mr. Craven sent Petitioner a copy of the brief along with a letter wherein stated as follows:

> I am still at a loss to understand why you choose to go to trial in the face of such overwhelming evidence. At some point though I think you need to take a long look in the mirror and accept the fact that you are where are, likely for life, as the result of the choices you made.

(Id. at 4).

While Petitioner may object to this statement from Mr. Craven, it does not demonstrate prejudice, let alone deficient representation. A copy of the appellant brief attached to the Government's response, (Id. at 4-32), demonstrates that Mr. Craven provided what representation he could on appeal in the face of what was an overwhelming presentation of Petitioner's guilt at trial. Petitioner has failed to show ineffective assistance of counsel in this claim and it will be denied and dismissed.

13.     Ground Thirteen

_____This claim for relief again raises the claim that Petitioner was forced to proceed pro se. (Doc. 1-21 at 24). The Court has concluded that Petitioner made a knowing and voluntary choice to represent himself after being cautioned on the potential folly of doing so. That Petitioner may contend that he suffered from this choice cannot be attributed to his trial counsel. This argument is overruled.

## IV. CONCLUSION

After having considered the arguments of the parties, the Court finds that Petitioner has failed to carry his burden of demonstrating that he is entitled to any relief through this collateral proceeding under 28 U.S.C. § 2255. For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside or Correct Sentence will be DENIED and DISMISSED.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion for Leave to File Supplement to 2255 Motion to Vacate, Supplemental Forensic Blood Expert Opinion, Motion's for Discovery and Motion for Appointment of Blood Expert. (5:08-CV-00041, Doc. No. 49). Petitioner has submitted his proposed expert report and this motion to supplement will be **GRANTED**. As it appears from the record that Petitioner has retained a blood expert, his motion for the appointment of a blood expert and motion for discovery will be **DISMISSED** as moot.

2.      Petitioner's Motion for Leave to File Supplement to 2255 Motion Pursuant to Fed. R. Civ. P. 15. (Doc. No. 50). As this Motion seeks to supplement the arguments already advanced in Petitioner's Section 2255, and therefore does not present new claims, this Motion will **DISMISSED** as moot.

3.      Petitioner's Motion for Leave to Supplement Pursuant to Fed. R. Civ. P. 15(c) and (d). (Doc. No. 53).  The Motion for Leave to Supplement, (Doc. No. 53), will be **DENIED**.

4.      Petitioner's Motion to Amend/Correct Clerical Mistake and Clarify Record. (Doc. No. 56). This Motion will be **ALLOWED** to clarify the record.

5.      Petitioner's Motion for Enlargement of Post-Deadline Extension of Time. (Doc. No. 60). This Motion will be **ALLOWED**.

6.      Petitioner's Motion to Supplement Pursuant to Fed. R. Civ. P. 15(c) and (d) will be **DISMISSED** as moot. (Doc. No. 64).

7.      Petitioner's Motion to Withdraw Supplement, (Doc. No. 64). (Doc. No. 71). The Motion to Withdraw Supplement will be **ALLOWED** for the reasons stated herein.

8.      Petitioner's Motion for Leave to File Supplement Regarding Expert Report on Blood Analysis will be **ALLOWED**. (Doc. No. 72).

9.      Petitioner's Motion for Leave to File Supplemental Pursuant to Fed. R. Civ. P. 15 will be **ALLOWED**. (Doc. No. 74).

10.      Petitioner's Motion to Amend is **ALLOWED**. (Doc. No. 75).

11.      Last, the Government filed a Motion for an Extension of Time to File a Response/Reply. (Doc. No. 59). This Motion will be **ALLOWED** for good cause shown.

**IT IS FURTHER ORDERED** that Petitioner's Section 2255 motion is **DENIED** and **DISMISSED**, as amended by Doc. Nos. 18 and 23. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (stating that in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: October 9, 2012

Richard L. Voorhees
United States District Judge