# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:03-CR-00004-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| RODERICK LAMAR WILLIAMS, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Roderick Lamar Williams's Motion for Reconsideration (Doc. No. 1072). Having carefully reviewed the motion and all other relevant portions of the record, the Court will grant the motion.

## I. BACKGROUND

From about January 1995 through July 2003, Williams, as a member of a drug-trafficking organization known as "The Cream Team," conspired to distribute cocaine and cocaine base in Iredell County, North Carolina. Williams travelled out of state and out of the country to buy large amounts of cocaine and crack and transport it back to North Carolina for distribution. He often carried firearms while engaging in these drug-trafficking transactions.

During his participation as a member of "The Cream Team" Williams had several run-ins with the law. In November 1999, police found 145 grams of cocaine floating in the toilet of an Amtrak sleeper car where Williams was riding. In January 2002, police found a handgun and more than 126 grams of cocaine in or near a car in which Williams was riding. On another occasion, Williams shot and killed Bobby Travon Houston, one of his co-conspirators who he believed was a federal informant.

1

On July 25, 2002, in Statesville, North Carolina, Williams and his co-conspirator, Phillip Morrison, robbed three drug-trafficking associates at gunpoint. Williams and Morrison had arranged for the purchase of a kilogram of cocaine, and rather than buy the cocaine, Williams and Morrison placed all three victims in a room and forced them to take off all their clothes except their underwear, before fleeing with the drugs. After Williams and Morrison fled, one of the victims, known as "Mole," ran to his car and retrieved a .9-millimeter handgun from his glove compartment. Mole began firing and shot Morrison in the left leg and Williams in the shoulder, causing Williams to drop some of the cocaine. Law-enforcement officers investigating the shooting seized about 220 grams of cocaine, a pair of pants, shell casings, and a handgun. A DNA test conducted on blood found on one of the packages of cocaine matched a known sample of Williams' blood.

Williams was convicted by a jury on charges of: conspiracy to possess with intent to distribute at least five kilograms of cocaine and at least fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute at least 500 grams of cocaine and aiding and abetting that possession, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count Six); and two counts of possession of a firearm during and in relation to a drug trafficking crime and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (Counts Seven and Nine).

The United States probation office calculated a base offense level of 38 based on Williams' responsibility for at least 1.5 kilograms of crack cocaine. Concluding that Williams had committed a murder as part of his drug-trafficking-conspiracy offense, the probation office applied a cross-reference to the murder guideline, U.S.S.G. § 2A.1, generating a total offense level of 43. Based on an offense level of 43 and a criminal-history category of VI, the Guidelines called for a sentence

of life in prison. Williams faced a mandatory consecutive sentence of 60 months in prison for his first section 924(c) firearm offense and a consecutive sentence of 300 months in prison for the second section 924(c) firearm offense.

This Court sentenced Williams to life imprisonment on Counts One and Six, to be served concurrently, and to consecutive terms of sixty months' imprisonment on Count Seven, and 300-months' imprisonment on Count Nine, for a total term of imprisonment of life plus 360 months. Williams was also sentenced to a ten-year term of supervised release on Count One, an eight-year term of supervised release on Count Six, and five-year terms of supervised release on each of Counts Seven and Nine, all such terms to be served concurrently, and ordered to pay a $400 special statutory assessment. (*See* Doc. No. 641). Williams appealed, and the Fourth Circuit affirmed this Court's judgment. *See United States v. Williams*, 225 F. App'x 151 (4th Cir. 2007).

Williams moved to vacate his sentence under 28 U.S.C. § 2255 in May 2008. *See* Case No. 5:08-cv-41. In its response to Williams's motion, the United States conceded that under the Fourth Circuit's decision in *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), decided after Williams's sentencing, this Court erred when it sentenced Williams to a sentence higher than that to which he was subject under the default sentencing range described in 21 U.S.C. § 841(b)(1)(C). The United States argued that Williams had not shown, however, that his counsel was ineffective because *Collins* was decided after Williams was sentenced. This Court denied and dismissed that motion to vacate in October 2012.

While in the Bureau of Prisons, Williams has received 20 disciplinary citations, including six citations for fighting, the most recent of which was in November 2019. (Doc. No. 1069 at 4). Williams has completed 91 educational and work programs. *Id*. Williams is credited with having

3

served 195 months in prison. *Id*. Williams now asks this Court to reduce his sentence under the First Step Act of 2018.

The Court denied Defendant's *pro se* motion to reduce his sentence under the First Step Act of 2018. (*See* Doc. No. 1070). The Defendant then moved for reconsideration and the United States responded consenting to a reduction of 360 months on Counts One and Six. (*See* Doc. Nos. 1072, 1074). The motion for reconsideration is now ripe for the Court's consideration.

## II. LEGAL STANDARD

Finality is a vital attribute of criminal judgments and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Consequently, a sentence of imprisonment is final and may not be modified once it has been imposed except in narrow circumstances as outlined in 18 U.S.C. § 3582(c). Section 3582(c)(1)(B) permits modification if it is expressly permitted by statute. The First Step Act expressly permits the Court to modify a term of imprisonment, and, as such, motions under Section 404 of the First Step Act fall under the purview of 18 U.S.C. § 3582(c)(1)(B).

As relevant here, the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduces "the statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Fair Sentencing Act modified the drug quantities required to trigger mandatory minimum sentences for cocaine base (known as crack cocaine) trafficking offenses; it increased the amount required to trigger the five-year mandatory minimum from 5 grams to 28 grams and increased the amount required to trigger the ten-year mandatory minimum from 50 grams to 280 grams. *See United States v. Wirsing*, 943 F.3d 175, 178-179 (4th Cir. 2019) (citing

4

Fair Sentencing Act, § 2, 124 Stat. at 2372). Section 3 eliminated the five-year mandatory minimum for simple possession of crack cocaine. *Id.* (citing Fair Sentencing Act, § 3, 124 Stat. at 2372).

The relevant provisions of the First Step Act apply to "a covered offense," which means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010." § 404(a), 132 Stat. at 5222. The First Step Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404, 132 Stat. at 5222. "Even if a defendant is eligible for a sentence reduction, however, the decision whether to grant a reduction is entrusted to the district court's discretion." *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020) (citing § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.")). "When imposing a new sentence" under the First Step Act, "a court does not simply adjust the statutory minimum; it also must recalculate the Guidelines range," *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020) (internal quotation marks omitted), and "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing," *id.* at 668. Moreover, "the [18 U.S.C.] § 3553(a) sentencing factors apply in the § 404(b) resentencing context," and a court "may consider post-sentencing conduct" in determining whether to exercise its discretion to reduce a sentence. *Id.* at 674.

### III. DISCUSSION

When a defendant seeks a reduced sentence under Section 404 of the First Step Act, this Court's review proceeds in two steps. First, the Court must determine whether the defendant was

5

sentenced for a "covered offense" as defined by the Act, and is, therefore, eligible for a sentence reduction. Here, the parties agree that Williams is eligible for a reduction on Counts One and Six. (Doc. No. 1072, 1074); *see* First Step Act § 404(a), 132 Stat. at 5222; *see also United States v. Lancaster,* 997 F.3d 171, 174 (4th Cir. 2021) ("We have concluded that a "covered offense" includes violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C)." (Citations omitted)).

Second, even if a defendant is eligible, the Court then exercises its discretion in determining whether, and to what extent, to impose a reduced sentence. In doing so, the court must engage in a brief analysis that involves the recalculation of the sentencing guidelines considering "intervening case law," *see Chambers*, 956 F.3d at 672, and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a), *id.* at 674; *United States v. Collington,* 995 F.3d 347, 352 (4th Cir. 2021). In considering the § 3553(a) factors, the court can consider a defendant's conduct after his initial sentencing. *See Chambers*, 956 F.3d at 674. District courts have broad discretion in deciding whether to grant a sentence reduction under Section 404 of the First Step Act. *See Jackson*, 952 F.3d at 495.

This brief analysis is broken down into three parts. First, the Court must accurately recalculate the Guidelines Sentencing range. Next, any original guideline errors are corrected, and any intervening case law made retroactive is applied. Lastly, the Court must consider the § 3553(a) factors to determine what sentence is appropriate. *Collington*, 995 F.3d at 355.

First, under the Fair Sentencing Act, Williams is now subject to a statutory maximum of up to 30 years in prison for Count One rather than Life Imprisonment. This is because under *United*

6

Case 5:03-cr-00004-KDB-DSC   Document 1076   Filed 05/11/22   Page 6 of 12

*States v Collins,* 415 F.3d 304 (4th Cir. 2005),[1] the jury's drug-quantity finding can no longer support a sentence higher than that to which he was subject to under 21 U.S.C. § 841(b)(1)(C). Thus, Williams' sentence of life imprisonment is no longer a guideline sentence because it is above the statutory maximum.

Due to the murder cross-reference under U.S.S.G. § 2A1.1 Williams' offense base level remains 43 on Count one. An offense base level of 43 results in a guideline range of life imprisonment. However, a guideline range is capped by the statutory maximum. *See United States v. Allmendinger*, 706 F.3d 330, 337 (4th Cir. 2013) (citing U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.")). Consequently, because Williams would have faced a statutory maximum of 30 years in prison on Count One had the Fair Sentencing Act been in effect when he committed his offense, the new guideline range is 30 years (360 months). Thus, this Court will exercise its discretion and reduce his sentence to a term of 360 months on Count One.

Williams also asks this Court to consider the changes made to 21 U.S.C. § 851 when reducing his sentence on Count One. (Doc. No. 1067, 1075). It is undisputed, and Williams concedes, that the changes to 21 U.S.C. § 851 are not retroactive and therefore do not apply to his case. *See United States v. Belle*, No. 3:06-748-JFA, 2021 U.S. Dist. LEXIS 199069, at *7 (D.S.C. Oct. 15, 2021); (Doc. No. 1067, 1072). That said, Williams correctly points out that the Fourth Circuit has held that courts may apply changes retroactively, even if under the relevant statute the

---

[1] Williams argues that the drug amount found by the jury should be considered invalid due to *United States v. Collins* because the amount found in Count One was attributable to the conspiracy. *United States v. Collins* was decided by the Fourth Circuit after Williams was found guilty by jury trial and is not retroactive. Yet the United States agrees that *Collins* should be applied retroactively here and thus the Court will do so.

7

change is not retroactive. *See e.g.*, *Lancaster*, 997 F.3d 171; *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). When the Government first sought a § 851 enhancement, it relied on North Carolina state court convictions from 1997. *See* Doc. No. 37 (851 notice). These convictions were for attempting to traffic in cocaine and possession with intent to sell and deliver cocaine. *Id*.

After the enactment of the First Step Act, Williams maintains that these convictions would no longer qualify as a "serious drug felony" because the term "serious drug felony" was defined as an offense described 18 U.S.C. § 924(e)(2). *See* First Step Act § 401(a)(1). That statute provides that an offense qualifies only if it carried "a maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A)(i). Williams asserts that the statutory maximum under North Carolina law for his convictions were less than 10 years. *See* N.C. Gen. Stat. § 15A-1340.17 (setting maximum penalties for Class G and H felonies below 10 years). Whether or not these offense would qualify for an § 851 enhancement today, they are "serious" offenses. This is especially true when viewed in the context of Williams' overall criminal history and offense conduct. Thus, the Court will, in its discretion, decline to sentence as if the § 851 enhancement is invalid.

Second, while Williams concedes he remains subject to a statutory maximum of life imprisonment on Count Six, the United States argues that Williams is eligible for a sentence reduction on Count Six because his guideline range for that offense was driven by the range applicable to his conspiracy offense. (*See* 1072, 1074). The parties agree that the murder-cross reference does not apply to Count six because the murder was unrelated to the substantive drug-trafficking offense he committed and that resulted in his injury in July 2002. *See United States v. Lancaster*, 997 F.3d 171, 176 (4th Cir. 2021); *United States v. Horton*, 693 F.3d 463, 479 (4th Cir. 2012); (*See* Doc. No. 1072, 1074). The United States maintains based on the original drug quantity of 1.5 kilograms of crack cocaine for the grouped offenses, Williams would be subject today to a

8

base and total offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). Combined with a criminal-history category of VI, the Sentencing Guidelines would advise a sentence of between 262 and 327 months in prison. (*See* Doc. No. 1074). The United States asks this Court to limit its reduction of Williams' sentence under Count Six to 360 months in prison because the section 3553(a) sentencing factors counsel against a sentence lower than 360 months in prison. (*See* Doc. No 1075). Williams maintains the United States' calculation overstates the seriousness of Count Six in that in relies on attributing to Count Six the drug weights relevant under Count One. Williams argues that if the Court were to consider Count Six by itself, William would face a base offense level of 24 because that count involved about 1 kilogram of powder cocaine. (*See* Doc. No. 1075). However, the Court declines to consider Count Six by itself. Further, as discussed below, the Court agrees with the United States that the § 3553(a) factors do not support a reduction lower than 360 months and thus the Court will reduction Williams' sentence to 360 months on Count Six.

Williams offers several arguments contending that the § 3553(a) factors support a reduced sentence. First, Williams argues that the requested reduction reflects the seriousness of the offense. He maintains that he only served short prison sentences prior to his current sentence but now has spent almost half of his life in custody which should be sufficient. Williams also urges the Court to ignore the murder cross-reference because its application was improper.[2] Thus, a reduction is warranted to bring his sentence in-line with other "similar" defendants. Next, Williams argues that a reduction in his case would track the recent wave of reductions due to the First Step Act. And lastly, Williams asks the Court to find that his remorse, acceptance, record of programming in the B.O.P., and support network for re-entry justify a reduction.

---

[2] Williams has already appealed the murder cross-reference and the Fourth Circuit held the Court properly applied it. *See United States v. Williams*, 225 F. App'x 151, 154 (4th Cir. 2007)

9

Having considered Williams' arguments and the § 3553(a) factors, the Court finds, on balance, they weigh against a reduction lower than 360 months on Counts One and Six. First, Williams' criminal history is lengthy and violent. He has been convicted of several assaults and drug-trafficking offenses, and he murdered a co-conspirator. Next, even numerous, albeit short, sentences of incarceration and imprisonment failed to deter him from further crime. (*See* Doc. No. 908). In fact, Williams has refused to correct his behavior while in the Bureau of Prisons. Williams has accumulated twenty citations while incarcerated including numerous citations for fighting. (*See* Doc. No. 1069). Williams' behavior while incarcerated suggests that he remains a danger to society, even when considering the support he will receive when released.

Furthermore, a sentence reduction of 360 months on Counts One and Six does not create unwarranted sentencing disparities. One of the goals of the Sentencing Guidelines is to avoid national sentencing disparities among similar offenders with similar criminal conduct. *See, e.g.*, *United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006). Thus, the best way to avoid unwarranted sentencing disparities is for the district court to impose a sentence within the guidelines range. A sentence of 360 months on Count One is a guideline sentence because the murder-cross reference raises the guideline range to the statutory maximum. (*See* 1069, 1072, 1074). While a 360 month[3] sentence on Count Six is above the United States' calculated guideline range, the Court finds 360 months is appropriate when considering the § 3553(a) factors in totality, particularly considering the offense conduct under both Counts One and Six as well as Williams' overall criminal history including the murder of his co-conspirator.

---

[3] Williams maintains the guideline range under Count Six is capped at 360 months. (*See* Doc. No. 1072 p. 4).

Finally, Williams was convicted of extremely serious offenses. Williams participated in a lengthy conspiracy to inundate the community with drugs. Williams's offense conduct resulted in a gunfight that caused the shooting of Williams but could easily have resulted in someone's death. And again, the Court found that credible testimony shows by the preponderance of the evidence that Williams murdered a co-conspirator who he believed was a federal informant. (Doc. No. 694 p.189). In sum, the Court finds that after consideration of the § 3553(a) factors, Williams is entitled to a reduction to a sentence of 360 months on Counts One and Six, to run concurrently.

Further, when reaching this conclusion, the Court has considered the letters of support from Williams' family and friends. These letters reflect that Williams maintains some support in the community and will have at least two job opportunities upon his release. At the same time, the letters fail to recognize the seriousness of his offense. One letter incorrectly states that Williams is serving a life sentence for "non-violent drug charges." (*See* Doc. No. 1072-1). As discussed above, Williams shot and killed a co-conspirator and often carried firearms while engaging in his drug-trafficking transactions. In fact, Williams was apprehended because he robbed three drug-trafficking associates at gunpoint, placed them in a room and forced them to take off all their clothes except their underwear, and was shot as he fled leaving behind DNA evidence.

## IV.  ORDER

**IT IS THEREFORE ORDERED** that Williams' motions to reduce his sentence under the First Step Act of 2018, and his motion to reconsideration (Doc. Nos., 1067, 1072), are **GRANTED.** The Court **HEREBY ORDERS** that Williams' term of imprisonment and commitment to custodial authorities is reduced to **360 MONTHS** on Counts One and Six to run concurrently to each other and consecutively to the sentences on Counts Seven and Nine. All other terms and conditions of Williams' sentence remain in full force and effect.

**SO ORDERED.**

Signed: May 11, 2022

Kenneth D. Bell
United States District Judge