# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:03-CR-00004-KDB-DSC-

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **RODERICK LAMAR WILLIAMS,** <br><br> **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Roderick Lamar Williams' *pro se* motion for compassionate release and reduction in sentence under 18 U.S.C. § 3582(c)(1) and the First Step Act of 2018 as well as the supplemental motion filed by the Federal Public Defender. (Doc. Nos. 1077, 1079). Defendant seeks compassionate release arguing that: (1) "stacking" of the § 924(c) counts creates a sentence disparity; (2) he would not be subject to the § 851 enhancement; (3) his sentence for crack cocaine overstates his accountability; and (4) his rehabilitative efforts and the § 3553(a) factors support release.

Having carefully reviewed the Defendant's motion, exhibits, and all other relevant portions of the record, the Court will grant in part his motion as Defendant has met his burden to establish that a sentencing reduction is warranted under 18 U.S.C. § 3582(c).

## I. BACKGROUND

From about January 1995 through July 2003, Williams, as a member of a drug-trafficking organization known as "The Cream Team," conspired to distribute cocaine and cocaine base in Iredell County, North Carolina. Williams travelled out of state and out of the country to buy large

1

amounts of cocaine and crack and transport it back to North Carolina for distribution. He often carried firearms while engaging in these drug-trafficking transactions.

During his participation as a member of "The Cream Team" Williams had several run-ins with the law. In November 1999, police found 145 grams of cocaine floating in the toilet of an Amtrak sleeper car where Williams was riding. In January 2002, police found a handgun and more than 126 grams of cocaine in or near a car in which Williams was riding. On another occasion, Williams shot and killed Bobby Travon Houston, one of his co-conspirators who he believed was a federal informant.

On July 25, 2002, in Statesville, North Carolina, Williams and his co-conspirator, Phillip Morrison, robbed three drug-trafficking associates at gunpoint. Williams and Morrison had arranged for the purchase of a kilogram of cocaine, and rather than buy the cocaine, Williams and Morrison placed all three victims in a room and forced them to take off all their clothes except their underwear, before fleeing with the drugs. After Williams and Morrison fled, one of the victims, known as "Mole," ran to his car and retrieved a .9-millimeter handgun from his glove compartment. Mole began firing and shot Morrison in the left leg and Williams in the shoulder, causing Williams to drop some of the cocaine. Law-enforcement officers investigating the shooting seized about 220 grams of cocaine, a pair of pants, shell casings, and a handgun. A DNA test conducted on blood found on one of the packages of cocaine matched a known sample of Williams' blood.

Williams was convicted by a jury on charges of: conspiracy to possess with intent to distribute at least five kilograms of cocaine and at least fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute at least 500 grams of cocaine and aiding and abetting that possession, in violation of 21 U.S.C. § 841 and 18 U.S.C.

§ 2 (Count Six); and two counts of possession of a firearm during and in relation to a drug trafficking crime and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (Counts Seven and Nine).

The United States probation office calculated a base offense level of 38 based on Williams' responsibility for at least 1.5 kilograms of crack cocaine. Concluding that Williams had committed a murder as part of his drug-trafficking-conspiracy offense, the probation office applied a cross-reference to the murder guideline, U.S.S.G. § 2A.1, generating a total offense level of 43. Based on an offense level of 43 and a criminal-history category of VI, the Guidelines called for a sentence of life in prison. Williams faced a mandatory consecutive sentence of 60 months in prison for his first § 924(c) firearm offense and a consecutive sentence of 300 months in prison for the second § 924(c) firearm offense.

This Court sentenced Williams to life imprisonment on Counts One and Six, to be served concurrently, and to consecutive terms of sixty months' imprisonment on Count Seven, and 300-months' imprisonment on Count Nine, for a total term of imprisonment of life plus 360 months. Williams was also sentenced to a ten-year term of supervised release on Count One, an eight-year term of supervised release on Count Six, and five-year terms of supervised release on each of Counts Seven and Nine, all such terms to be served concurrently, and ordered to pay a $400 special statutory assessment. (See Doc. No. 641). Williams appealed, and the Fourth Circuit affirmed this Court's judgment. See United States v. Williams, 225 F. App'x 151 (4th Cir. 2007).

Williams moved to vacate his sentence under 28 U.S.C. § 2255 in May 2008. See Case No. 5:08-cv-41. In its response to Williams's motion, the United States conceded that under the Fourth Circuit's decision in United States v. Collins, 415 F.3d 304 (4th Cir. 2005), decided after Williams's sentencing, this Court erred when it sentenced Williams to a sentence higher than that

to which he was subject under the default sentencing range described in 21 U.S.C. § 841(b)(1)(C). The United States argued that Williams had not shown, however, that his counsel was ineffective because Collins was decided after Williams was sentenced. This Court denied and dismissed that motion to vacate in October 2012.

On May 11, 2022, the Court granted Williams' Motion to Reduce his Sentence under the First Step Act reducing his term of imprisonment to 360 months on Counts One and Six to run concurrently to each other and consecutively to the sentences on Counts Seven and Nine. *See* Doc. No. 1076. Williams now moves for compassionate release and a reduction in his sentence under 18 U.S.C. § 3582(c)(1). *See* Doc. Nos. 1077, 1079.

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Nonetheless, Congress has provided a few exceptions to this general rule. One such exception is a motion for compassionate release. Before the passage of the First Step Act, district courts were only permitted to reduce a term of imprisonment on motions for compassionate release made by the Director of the Bureau of Prisons (BOP). Now, a court may entertain a motion filed by a defendant. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

(c) **Modification of an imposed term of imprisonment**. —The Court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment),

4

after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

18 U.S.C. § 3582(c). Upon exhaustion of his administrative remedies, "a defendant becomes eligible for relief only if the court finds that a reduction is both (1) warranted by 'extraordinary and compelling reasons' and (2) 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. High*, __ F.3d __, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021).

However, there is currently no applicable policy statement governing compassionate release motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). "The only policy statement that could possibly be 'applicable'" is U.S.S.G. § 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 282 (emphasis added). Section 1B1.13 applies only to BOP-filed motions. As a result, district courts may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.* Still, the Fourth Circuit has recognized that § 1B1.13 provides helpful guidance to courts in determining what constitutes "extraordinary and compelling reasons." *High*, __ F.3d at __, 2021 WL 1823289, at *3. With respect to medical conditions, § 1B1.13 states that extraordinary and compelling reasons include when a "defendant is suffering from a terminal illness" or is "suffering from a serious physical or medical condition." U.S.S.G. 1B1.13 cmt. 1(A)(i), (ii).

Even if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must consider the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

### III.  DISCUSSION

1. <u>Sentencing Disparity due to "stacking" of § 924(c) Counts</u>

Williams argues that the severity of his stacked § 924(c) sentences along with the disparity between that sentence and the sentence he would receive today constitute extraordinary and compelling reasons for a sentence reduction. *See* Doc. No. 1079. Before the First Step Act, a second or subsequent count of conviction under § 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count of conviction. *McCoy*, 981 F.3d at 275. This was because, in *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court held that, even when multiple counts under § 924(c) were in the same indictment, the conviction on the first count did not have to be final before the mandatory increases and stacking provisions were triggered. *Id.* Thus, when Williams was sentenced, a defendant with two or more counts in one indictment was subject to a mandatory minimum of five years on the first count and

twenty-five years on the second count. Accordingly, Williams received a mandatory-minimum sentence of 60 months for his first § 924(c) conviction and 300 months for his second § 924(c) conviction to run consecutively to his drug counts.

The First Step Act revised § 924(c)(1)(C) by providing that the higher penalty for a "second or subsequent count of conviction" under § 924(c) is triggered only if the defendant has a prior § 924(c) conviction that had "become final." § 403(a), 132 Stat. at 5222; *McCoy*, 981 F.3d at 275. The Act further specified that the amendments to § 924(c) shall apply to any offense that was committed before enactment of the Act if a sentence for the offense has not been imposed as of such date of enactment. In other words, the amendments made to § 924(c) by the First Step Act are not retroactive.

In *McCoy*, the Fourth Circuit affirmed the holding by a district court that the gross disparity between the sentences the defendants received and the much lower sentences they would receive today (because of the amendments made to § 924(c) by the First Step Act) constituted extraordinary and compelling reason to reduce their sentences. Here, if Williams was sentenced today his aggregate sentence would result in a mandatory minimum sentence of 120 months—or 20 years shorter than his current sentence. The Court will therefore reduce Williams' sentence on Counts Seven and Nine to 60 months on each to run consecutively to each other and to the 360 months on Counts One and Six.[1]

---

[1] Along with the subsequent change in the law, Williams contends he was denied the benefit of the applicable DOJ policy at the time of his sentencing. A DOJ memorandum noted that most circuit courts to consider the issue had determined that § 924(c) addresses the relationship between the firearm and the ongoing conspiracy rather than the "individual acts of using or carrying, and that, consequently, the predicate offense is the proper unit of prosecution." *See* Doc. No. 1079-1. Accordingly, the DOJ directed its attorneys to eliminate the stacking of § 924(c) charges arising from a single predicate offense. *Id*. Whatever the internal policy of the DOJ at the time of Williams' conviction is irrelevant to this Court's analysis. Williams' stacked § 924(c) sentences were proper at the time of his sentencing regardless of DOJ policy.

7

2. § 851 Enhancement

Williams again asks this Court to consider the changes made to 21 U.S.C. § 851 and a reduction of his sentence on Counts One and Six. *See* Doc. Nos. 1067, 1075, 1079. It is undisputed that the changes to 21 U.S.C. § 851 are not retroactive and therefore do not apply to his case. *See United States v. Belle*, No. 3:06-748-JFA, 2021 U.S. Dist. LEXIS 199069, at *7 (D.S.C. Oct. 15, 2021); (Doc. No. 1076). Nevertheless, the Fourth Circuit has held that courts may apply changes retroactively, even if under the relevant statute the change is not retroactive. *See e.g.*, *United States v. Lancaster,* 997 F.3d 171 (4th Cir. 2021); *McCoy*, 981 F.3d at 271.

When the Government first sought a § 851 enhancement, it relied on North Carolina state court convictions from 1997. *See* Doc. No. 37 (851 notice). These convictions were for attempting to traffic in cocaine and possession with intent to sell and deliver cocaine. *Id*. Williams argues that these convictions would no longer qualify as a "serious drug felony" because the term "serious drug felony" was defined as an offense described 18 U.S.C. § 924(e)(2). *See* First Step Act § 401(a)(1). That statute provides that an offense qualifies only if it carried "a maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A)(i). Williams contends that the statutory maximums under North Carolina law for his convictions were less than 10 years. *See* N.C. Gen. Stat. § 15A-1340.17 (setting maximum penalties for Class G and H felonies below 10 years).

As the Court has already ruled, whether these offense would qualify for a § 851 enhancement today, they are "serious" offenses. *See* Doc. No. 1076. "This is especially true when viewed in the context of Williams' overall criminal history and offense conduct." *Id*. Accordingly, the Court will again, in its discretion, decline to sentence as if the § 851 enhancement is invalid.

3. Level of Crack Cocaine is Overstated

8

Next, Williams argues that the calculated offense level overstates the nature of Count Six because it relies on attributing to Count Six the drug weights relevant under Count One due to guidelines grouping. On Count Six, the jury convicted Williams of possession with intent to distribute "at least 500 grams" of powder cocaine—not crack cocaine as in Count One. *See* Doc. No. 340, 364. Williams notes under the sentencing guidelines, 500 grams of powder cocaine results in a base offense level of 24. *See* U.S.S.G. § 2D1.1(c)(8) (setting base offense level of 24 for offenses involving between 500 grams and 2 kilograms of powder cocaine). When combined with a criminal history category of VI, an offense level of 24 would produce a guidelines range of 100 to 125 months. However, the Court finds that the nature of Count Six is not overstated.

Counts One and Six were properly grouped together. *See* U.S.S.G. § 3D1.2 (all counts "involving substantially the same harm shall be grouped together into a single Group."); U.S.S.G. § 3D1.3(b) ("the offense level applicable to a Group is the offense level corresponding to the aggregated quantity"). Williams concedes as much in his motion. *See* Doc. No. 1079, p. 17. Accordingly, the presentence report correctly attributed 1.5 kilograms of crack cocaine to Williams for Count Six. And the Court finds no reason to "ungroup" Count Six now when it was properly done so at Williams' original sentencing. The Court therefore concludes that the calculated offense level does not overstate the nature of Count Six.

Williams also argues a reduced sentence is appropriate given the disparities between crack and powder cocaine offenses. While reduced (the crack-to-powder ratio is now 18:1 as opposed to 100:1 and the amount of crack cocaine required to trigger mandatory minimums has been increased), a disparity remains. *See* U.S.S.G. § 2D1.1, comment. (n.7(D)); Fair Sentencing Act of 2010, Pub. L. 111-220. Williams maintains without the crack-to-powder disparity, he would face a guidelines range of 100 to 125 months instead of 210 to 262 months. *Compare* U.S.S.G. §

9

2D1.1(c)(8) (setting a base offense level of 24 for offenses involving at least 500 grams but less than 2 kilograms of powder cocaine) *with* U.S.S.G. § 2D1.1(c)(4) (setting a base offense level of 32 for offenses involving at least 840 grams but less than 2.8 kilograms of cocaine base).

However, the crack-to-powder disparity is not an extraordinary and compelling reason for relief. Congress chose not to reduce crack offenses to a 1:1 ratio with powder cocaine crimes. While that decision is subject to disagreement, it was Congress's to make. As such, the Court will not second-guess Congress and displace its authority to make such determinations.

4. <u>Rehabilitative Efforts and the 3533(a) Factors</u>

At Defendant's sentencing, the Court considered each of the § 3553(a) factors and determined that Defendant's conduct warranted a substantial custodial sentence. In determining whether a reduced sentence is appropriate, the Court must again undertake such an analysis to determine that Defendant's sentence is "sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) the sentencing guidelines; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." *Id.*

By age thirty Williams had earned a criminal history category VI. (Doc. No. 1079 at 17, 18). The nature and circumstances of his offenses were extreme and serious as Williams participated in a lengthy conspiracy to inundate the community with drugs. Williams's offense conduct resulted in a gunfight that caused the shooting of Williams but could easily have resulted in someone's death. Moreover, at sentencing the Court found that credible testimony demonstrated, by the preponderance of the evidence, that Williams murdered a co-conspirator who

10

he believed was a federal informant. (Doc. No. 694 p.189). As this Court noted when Williams was sentenced, his criminal history supports a need to protect the public and still does. On balance, the Section 3553(a) factors weigh against a sentence reduction in Williams' case.

The records also indicate Williams has completed approximately ninety-one educational or work assignments during his time of incarceration. Although laudable, his efforts at rehabilitation do not outweigh the other Section 3553(a) factors and the danger he poses to society.

Lastly, post release plan is encouraging, and it is very much hoped that his prospective living and employment opportunities remain available upon release. Nonetheless, a sound post release plan, when considered in concert with the factors described above, does not justify an early release based on extraordinary and compelling reasons.

In sum, the Court has considered each of the advanced grounds in combination to determine whether taken together they rise to an extraordinary and compelling reason to grant compassionate release. The Court finds that the advanced grounds do, in part, rise to the level of an extraordinary and compelling reason. For reasons discussed above, Defendant's pro se motion for compassionate release and reduction in sentence under 18 U.S.C. § 3582(c)(1), and the First Step Act of 2018 (Doc. Nos. 1077, 1079) are **GRANTED in part**.

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion and the supplemental motion filed by the Federal PublicDefender, (Doc. Nos. 1077, 1079), are **GRANTED** in part.
2. Williams' sentence on Counts Seven and Nine are reduced to 60 months on each count to run consecutively to each other and consecutively to the 360 months on Counts One and Six.

**SO ORDERED**.

Signed: November 21, 2022

Kenneth D. Bell
United States District Judge